## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | **Docket No. 2:23-CR-00726 (ES)** |
| **v.** | **HON. ESTHER SALAS** |
| **WILLIAM B. WELWART, ETHAN B. WELWART, and GARY KACZKA** | |

## DEFENDANTS GARY KACZKA, WILLIAM B. WELWART, AND ETHAN B. WELWART'S MOTION TO DISMISS THE INDICTMENT OR IN THE ALTERANTIVE, DISQUALIFY COVERNMENT COUNSEL

**On the Brief:**

Laura K. Gasiorowski, Esq.
Attorney for Defendant, Gary Kaczka

Lee Vartan, Esq.
Attorney for Defendant, William B. Welwart

Bruce Levy, Esq. & Melissa F. Wernick, Esq.
Attorneys for Defendant, Ethan B. Welwart

TABLE OF CONTENTS

TABLE OF AUTHORITIES…………….………………………………………………………iii

BACKGROUND ……………………………………………………………………………3

LEGAL ARGUMENT ………...………………………………………….……...……10

I.    The Delegation of All the Powers, Functions and Duties of the Office of
      the United States Attorney to a Triumvirate of Attorneys Violates the
      Appointments Clause and the Statutes Enacted by Congress, the FVRA,
      and the Delegation Statutes of §§§ 509, 510, and 515 Cannot be Used
      as a Loophole Especially in Light of the History of Executive Abuse …………....10

II.   The Triumvirate Violates the Separation of Powers: Wholesale Delegation
      is Institutional Dissolution of an Office Created by Congress and Subverts
      the Constitutional Requirement that the United States Attorney's Office
      be Headed by a PAS Officer, and Fails to provide Accountability to the
      Electorate or Guarantee the Appointment of Senate Confirmed, Qualified
      Appointees ……………………………………………………………….….... 15

III.  By Creating the Triumvirate, the Attorney General and Therefore
      the Executive Have Undermined the Accountability that the
      Appointments Clause was Meant to Promote and Ensure ……………...….. 19

IV.   Because a Court Appointed United States Attorney's Term Ends Only
      When The Vacancy Has Been Filled by a Senate Confirmed Nominee,
      Desiree Grace Remains the United States Attorney; Even if the President
      had the Power to Remove Her by Firing Her, and Not Filling the Vacancy,
      the Power to Appoint Remains with the District Court, or the President;
      It Does Not Revert to the Attorney General   ……………….....................……….. 20

      1.  28 U.S.C. § 541(c) is Limited by its Own Language, and Does
          Not Require a Contrary Reading of Section 546(d); ……………………. 24

CONCLUSION ……………………………..…………………………………………… 29

TABLE OF AUTHORITIES

<u>CASES</u>

*Burnap v. United States*,
    252 U.S. 512 (1922) …………………………………………….………..... 22

*Freytag v. C.I.R.*,
    501 U.S. 858 (1991) ……………………………………………………… 19

*In Re Grand Jury Subpoenas to Off. Of New York State Att'y Gen*,
    No. 25 MISC 19 (LGS), 2026 WL 60793 (N.D.N.Y., Jan. 8, 2026)……………..……… 2

*L.M-M v. Cuccinelli*,
    442 F. Supp. 3d 1 (D. D.C. 2020) ……………..………………………………… 11, 20

*Morrison v. Olson*,
    487 U.S. 654 (1988) …………………………….. …………....………………….. 18, 26, 27

*Myers v. United States*,
    272 U.S. 52 (1926) …………………………………………………...…....………. 22

*New Mexico v. Musk*,
    784 F. Supp. 3d 174 (D.D.C. 2025) …………………………………………….. ...… 17

*Trump v. United States*,
    603 U.S 593 (2024) ………………………………………………………..... 17, 18

*United States v. Baldwin*,
    541 F. Supp. 2d 1184 (D.N.M. 2008) …………………………..……………..……….. 26

*United States v. Comey*,
    No. 25 Cr. 272 2025 WL 3266932 (E.D. Va No. 24, 2025) ……………...…..……… 2, 28

*United States v. Gantt*,
    194 F.3d 987 (9th Cir. 1999) …………………………………………...……… 21

*United States v. Garcia*,
    No. 25 Cr. 230 2025 WL2784640 (D. Nev. Sept. 30, 2025) …………..…..…..……… 1

*United States v. Giraud*,
    160 F.4th 390 (3d. Cir. 2025) …………………………………….…………….. *passim*

*United States v. Giraud*,
    795 F. Supp. 3d 560 (D.N.J. 2025)*, aff'd,* 160 F.4th 390 (3d Cir. 2025) ......…..….… *passim*

iii

*United States v. Hilario,*
　　218 F.3d 19 (1st Cir. 2000) …….............….….…………..……………..…… 25, 26

*United States v. James,*
　　No. 25 Cr. 122, 2025 WL 3266931 (E.D. VA No. 24 2025) ……………………. 2, 20, 28

*United States v. Perkins,*
　　116 U.S 483 (1886) ……………………………………………….…..…………… 15, 22

*United States v. Ramirez,*
　　25 Cr. 230, 2025 WL 2784640 (D. Nev. Sept 30, 2025)………………………….……... 1

*United States of America, Plaintiff, v. Rafael Ramirez-Martinez,*
*Defendant. Edison Brady, Defendant. Ali Alhigaimi Esqueda,*
*Defendant. Bryson Chee, Defendant. Joshua Black, Defendant.*
*Ryan Nolan Kee, Defendant. Julian Gunther, Defendant.*
*Jose Magana Garcia, Defendant. Sealed, Defendant Leon Jeremy Poellnitz,*
*Defendant. John C. Dominguez, Defendant. Richard Sedillo, Defendant.*
*Marty Lopez, Defendant. Mabelene Grey, Defendant. Azariah Cleveland,*
*Defendant. Desiree Archuleta, Defendant. Kendall Benally, Defendant.*
*Eric Shaun McAfee, Defendant. Jacob Ezekiel Martinez, Defendant.,*
　　1:22-CR-01721-KWR, 2026 WL 113431 (D.N.J. Jan. 14, 2026) …………..…... 11, 13

*United States v. Sotomayor Vazquez,*
　　69 F. Supp. 2d 286 (D.P.R. 1999), *aff'd,* 249 F.3d 1 (1st Cir. 2001) …….………...… 21

*Weiss v. United States,*
　　510 U.S. 163 (1994) ……………………………………………………..…………….... 15

<u>STATUTES</u>

5 U.S.C. § 3345 …………………………….…………………..………………....………... 12

5 U.S.C. § 3345(b) ………………….………………………………………….…………… 6

5 U.S.C. § 3346 …………………………………………………………………………….... 12

5 U.S.C. § 3347 (a)(1)(A) ……………….…………………………………………...…….. 12

5 U.S.C. § 3347(b) …………………………………………………………………….……. 11

28 U.S.C. § 292(b) ……………………………………………….……………………….… 7

28 U.S.C. § 509 …………………….……………………………….………………..…….... 6

28 U.S.C. § 510 ……………………………………………..……..………………….…….. 6

28 U.S.C. § 515 …………………….……………………………………….…………..……6

28 U.S.C. § 541 ……………….…………………………..……………………..………... *passim*

28 U.S.C. § 541 (a) ………………….………………….……………………………... *passim*

28 U.S.C. § 541 (b) ………………………….……………………………………………. 25

28 U. S.C. § 541 (c) ……………………….……….…………………………… 6, 25

28 U. S.C. § 541 (d) ……………………………….…………………………………… 25

28 U.S.C § 542 ………………………….…………………………………………….... 16

28 U.S.C § 543 …………………………………………………………………..……. 16

28 U.S.C § 544 ……………………………………………………………………..… 16

28 U.S.C § 545 ………………………………………………………………………. 16

28 U.S.C § 546 ………………………………………………………….…... *passim*

28 U.S.C. § 546(a) ………………………………………..……………………... 3, 4, 24

28 U.S.C. § 546(b) ………………………………………………………………… 24

28 U.S.C. § 546(c) …………………………….…………………………………… 4, 24

28 U.S.C. § 546 (c)(2) …………………………………………………………… 5, 14, 20

28 U.S.C § 546(d) ………………………….…………………………..…………... *passim*

28 U.S.C. § 547 ……………………………………………………………………….... 16

28 U.S.C. § 548 ……………………………………………………………………….... 16

28 U.S.C. § 549 ……………………………………………………………………….... 16

28 U.S.C. § 550 ……………………………………………………………………….... 16

28 U.S.C. § 551 ……………………………………………………………………….... 16

28 U.S.C. § 552 ……………………………………………………………………….... 16

28 U.S.C. § 553 ……………………………………………………………………….... 16

28 U.S.C. § 554 ……………………………………………………………………….... 16

28 U.S.C. § 555 ……………………………………………………………………….... 16

28 U.S.C. § 556 ……………………………………………………………………….... 16

28 U.S.C. § 557 ……………………………………………………………………….... 16

28 U.S.C. § 558 ……………………………………………………………………….... 16

28 U.S.C. § 559 ………………………………………………………………………..... 16

28 U.S.C. § 560 ……………………………………………………………………….... 16

28 U.S.C. § 561 ……………………………………………………………………….... 16

28 U.S.C. § 562 ……………………………………………………………………….... 16

28 U.S.C. § 563 …………………………………………………………………….... 16

28 U.S.C. § 564 …………………………………………………………………….... 16

28 U.S.C. § 565 …………………………………………………………………….... 16

28 U.S.C. § 566 …………………………………………………………………….... 16

<u>OTHER AUTHORITY</u>

Article II of the U.S. Constitution …………………………………………………….. 6

Federalist LXXVI (Hamilton) …………………………………………………….. 19

Federal Vacancies Reform Act of 1998, S. Rep. No. 105-250 at 3-4 (July 15, 1998) …..… 12, 16

H.R. Rep. No. 110-58, at 5-6 (March 20, 2007) ……………………………………..… 29

*United States v. Giraud*, 25-2635 (3d Cir. Sept. 12, 2025), ECF No. 25, P.53 …………..……... 9

U.S. Cont. art. II § 2 cl. 2 …………………………………………………………….... 17

In the never-ending attempt by the President and his Attorney General to end run the Constitution and statutory law, the Administration now claims that a group of three attorneys (hereinafter, the "Triumvirate") are properly appointed to run the all-important office of United States Attorney for the District of New Jersey. The Government's machinations can no longer be viewed as a misunderstanding of the law, but as a manipulation of it, at the expense of the constitutional system, and the principles that underlay the FVRA itself.

The Government's position that the Attorney General can use wholesale delegation of the powers of United States Attorneys' Office to sidestep the statutorily and constitutionally permitted means of filling the vacancy has already been roundly defeated. First, in *United States v. Giraud,* 160 F.4th 390 (3d Cir. 2025), the Court of Appeals held that the Government's theory that Ms. Habba could exercise all the powers of the United States Attorneys' Office through the general delegation statutes would eviscerate the FVRA and undermine the Congressional intent to require Senate confirmation of presidential appointees. *Id.* 407.

Addressing similar challenges to Acting or Interim U.S. Attorney appointments, District Courts from New York to California have also uniformly held that these "delegation" appointments are invalid.  See *United States v. Ramirez.* 25 Cr. 264, 2025 WL 3019248 (D.C CAL. Oct. 28, 2025); *United States v. Garcia*, No. 25 Cr. 230 2025 WL 2784640 (D. Nev. Sept. 30, 2025).

*United States v. Comey*, No. 25 Cr. 272, 2025 WL 3266932 (E.D. VA No. 24, 2025); *United States v. James*, No. 25 Cr. 122, 2025 WL 3266931 (E.D. VA Nov. 24, 2025); *In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.*, No. 25 MISC 19 (LGS), 2026 WL 60793 (N.D.N.Y. Jan.8, 2026).

Nevertheless, the Government persists. The Triumvirate is also unlawful, however. First, the dispersal of all of the functions and duties of the U.S. Attorney among three individuals, rather than concentration in one person, does not avoid creating a "de facto" acting attorney in contravention of the FVRA and the Appointments Clause. As in *Giraud*, and in every other case facing similar efforts to evade the statutory scheme, the Government cannot use the general delegation statutes to avoid compliance with the FVRA and the requirement of senate confirmation of a United States Attorney.

Second, the Court can find that creation of the Triumvirate to run an office otherwise headed by a PAS United States Attorney constitutes either executive creation of a new office, a power reserved to Congress, or the extinguishment of the Office itself. Neither is permitted. Third, what is framed as "delegation" is actually an institutional dissolution that threatens the accountability otherwise guaranteed by the PAS process.  Fourth, Congress gave § 546(d) power to appoint to the District Court once the executive branch had exhausted or abandoned the avenues of filling a vacant office. Short of replacing the U.S. Attorney with a presidential nominee confirmed by the Senate, the executive branch must yield to the District Court's power to

appoint rather than continue to invoke the delegation powers of the Attorney General well after the executive branch extinguished its authority to temporarily fill the office.

Finally, although the Government has failed to challenge the authority of the Court to appoint a United States attorney legally, President Trump's removal of Desiree Grace, the former First Assistant appointed by the Judges of the District Court on July 22, 2025, is a repudiation of 28 U.S.C. § 546(d) and the Court's authority.  So too is the installation of the Triumvirate. President Trump did not have unlimited power to remove Ms. Grace, and the Attorney General does not have the power to appoint the Triumvirate to fill an Office that under § 546(d) was, or would have been, lawfully occupied by Ms. Grace.  Ms. Grace's removal was unlawful, Ms. Habba could not have lawfully replaced her, and that appointment, or a successive one, are now the only means to fill the U.S. Attorney position other than with a PAS officer.

## **Background**

While the background is well-known, a short recital of the procedural history of this case and the larger challenge to the Government's statutory and Constitutional violations helps frame the issues and illuminate the deliberate intent to subvert constitutional powers.

Alina Habba was first appointed as Interim U.S. Attorney under 28 U.S.C. § 546(a).  Ms. Habba was formally sworn in as Interim United States Attorney on March 28, 2025. *United States v. Giraud*, 795 F. Supp. 3d 560, 569

(D.N.J. 2025), *aff'd,* 160 F.4th 390 (3d Cir. 2025). Statutory interim appointments are limited to 120 days. *Id., citing* 28 U.S.C. § 546(c).   That term begins with the first temporary appointment and does not restart upon a successive appointment made during that period. *Id.,* at 579. Because Mr. Giordano had been appointed Interim U.S. Attorney on March 3, 2025, the 120-day time limit had begun to run then, not when Ms. Habba was appointed.

By statute, a U.S. Attorney thus appointed serves until the earlier of the expiration of the 120-day term, <u>or</u> the appointment of a Senate confirmed presidential nominee. 28 U.S.C. § 546 (a). If that 120-day term expires, and there is no presidential nominee confirmed by the Senate to fill the vacancy, the authority to fill the vacancy shifts to the Judges of the District Court. §§ 546(c); (d).   On July 22, 2025, the Judges of the United States District Court of New Jersey invoked their statutory power to appoint a United States Attorney upon the expiration of an Interim United States Attorney's 120-day term and issued a Standing Order appointing the First Assistant, Desiree Grace, as the U.S. Attorney. *Giraud,* 795 F. Supp.3d at 570.

 As this Court succinctly observed in the *Giraud* opinion, "Trump Administration officials were not pleased with that appointment." *Id.*  What followed was a concerted effort to override the statutory scheme, aggrandize the power of the executive branch at the expense of Congress and the District Court, and keep the President's nominee in office, without the consent of the Senate.

There was little debate as to what <u>should</u> have happened. Sections 546(c)(2) and (d) very clearly set forth the progression for filling the vacancy in the Office. The Judges of the District Court could exercise their authority to appoint the U.S. Attorney only after the Executive's exercise of that authority had been exhausted: that is, the Court could act only if 1) the Attorney General's interim appointment expired <u>and</u> 2) the President failed to appoint a Senate approved United States Attorney. 28 U.S.C. § 546(c)(2); (d).  As to further filling that vacancy, the statutes also clearly tied the Government's hands and precluded appointing Ms. Habba.  Because Congress' enactment of § 546 arose from the authority granted to it by the Constitution, the Government could not challenge the District Court Judges' authority to appoint Ms. Grace.

Hands thus bound, the Government cast the Court's adherence to the statute and exercise of its authority under the Appointments Clause as politicized judicial activism in its social media. *Id.* at 570. To counter those judges, Ms. Bondi stated that 'the First Assistant United States Attorney in New Jersey'—Ms. Grace— 'has just been removed.'" *Id.*

Having framed the judicial appointment of Ms. Grace as a political power grab (exquisitely ironic given the Government's installation of Ms. Habba), the Executive then hatched the inventive but legally dubious plan to affect Ms. Habba's assumption of the post regardless of the statutes and the Constitution. On July 24, 2025, the Administration withdrew Ms. Habba's nomination to be

the United States Attorney. *Id.*  Then, after Ms. Habba resigned from her position as Interim United States, AG Bondi appointed Ms. Habba as a "Special Attorney to the Attorney General" pursuant to 28 U.S.C. §§ 509, 510, and 515 and "authorized [her] to conduct in the District of New Jersey, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct."  *Id.*  Simultaneously, AG Bondi elevated Ms. Habba to First Assistant United States Attorney hoping to trigger her automatic elevation as a FAUSA to the position of Acting United States Attorney pursuant to the FVRA, despite the fact that she had not served as First Assistant at the time of the vacancy. See 5 U.S.C. § 3345(b).

Two days later, on Saturday, July 26, 2025, Administration officials finally sent a letter and email to Ms. Grace informing her that her appointment under § 546(d) had never become effective because Ms. Habba's term as Interim United States Attorney did not "expire" and  stating that "the President of the United States has removed you from that office today, pursuant to his authority under 28 U.S.C. § 541(c) and Article II of the U.S. Constitution." *Id.* at 571. (further citation omitted).

Within days, the first of many motions challenging Ms. Habba's authority were filed.  Defendants Julien Giraud Sr. and Julien Giraud Jr. and defendant Cesar Pina were the first to seek dismissal of their indictments, and/or disqualification of Ms. Habba on the ground that she was unlawfully serving as

6

Acting United States Attorney. The Honorable Michael A. Chagares, Chief

Judge of the United States Court of Appeals for the Third Circuit, designated

the Honorable Matthew W. Brann, Chief Judge for the Middle District of

Pennsylvania for service in the District of New Jersey pursuant to 28 U.S.C. §

292(b) and reassigned the *Giraud* matter "and all related cases"

On August 21, 2025, Judge Brann ruled in favor of defendants Giraud

and Pina, disqualifying Alina Habba and any Assistant U.S. Attorney ("AUSA")

who prosecutes "under the supervision or authority of Ms. Habba" on the basis

that Ms. Habba was exercising the functions and duties of the Office of the

United States Attorney without lawful authority under the FVRA, delegation or

the Special Attorney theories. *United States v. Giraud*, 795 F. Supp. at 601-02.

Having ruled in favor of the defendants on statutory grounds, the Court did not

address any constitutional claims that the government's actions violated the

Appointments Clause or the separation of powers. *Id.* at 603.  The Court also

ruled that any actions taken by Ms. Habba beyond July 1, 2025, the expiration

of the 120-day limit to the attorney general's power under 28 U.S.C. § 546,

were void and null. *Id.* at 567, 603. The Government appealed.

 In Messrs. Welwart and Mr. Kaczka's matter, the Government sought

scheduling of motions and the trial despite the pendency of the appeal and the

uncertainty of the consequences of the Third Circuit's eventual decision.

Counsel for Mr. Kaczka confirmed his intent to object to Ms. Habba's authority

but agreed with the general proposition by the Honorable Esther Salas that

7

staying the proceedings until decision by the Court of Appeals was more judicious and practical. ECF at 128. The Government argued that a stay was prejudicial to the prosecution and continued to assert that Ms. Habba could lawfully remain in place due to this Court's stay of his ruling. ECF at 129.

Defendants' motion to stay, and in the alternative, disqualify Ms. Habba, was never decided. Pursuant to Judge Chagares' Order, the motion was referred to Judge Brann where it lay dormant. On December 1, 2025, the Court of Appeals for the Third Circuit affirmed that Ms. Habba is not the Acting United States Attorney. *United States v. Giraud,* 160 F.4th 390, 406-07 (3d Cir. 2025) ("Habba is not the Acting U.S. Attorney for the District of New Jersey … [and] the Attorney General's delegation of all the powers of a U.S. Attorney to Habba is prohibited by the FVRA's exclusivity provision.").  A week later, on December 8, 2025, Alina Habba resigned.

Dicta in these cases provided an opening to the Government to continue its attempt to avoid filling the Office with a PAS officer. In holding that using the general delegation statutes to delegate the core functions of a U.S. Attorney to a single individual created a "de facto" U.S. Attorney that constituted an end run around the FVRA, the District Court and then the Court of Appeals had questioned whether "some delegation" of all the powers of the office in more than one person would be permissible. *United States v. Giraud*, 160 F. 4th at 406.[1] Although the Government had strenuously argued that such a

---

[1] "Moreover, as the District Court noted, our decision that the delegation of all the powers of a U.S. Attorney would run afoul of the FVRA's exclusivity provision does not necessarily mean that some delegation by the Attorney General to

distinction was immaterial and "absurd" in the Giraud litigation, *see United States v. Giraud*, 25-2635 (3rd Cir.Sept.12, 205), ECF 25, p. 53, the Government quickly reversed course  Seizing on the dicta as a lifeline, the Attorney General announced a "triumvirate" of three non-PAS staff attorneys to run the Office. To create the Triumvirate,  Attorney General Bondi appointed Philip Lamparello, to serve as Senior Counsel, who is "authorize[d] . . . to supervise or conduct the work of the district's Criminal Division and Special Prosecutions Division . . ."; Jordan Fox, to serve as Special Attorney who is "authorize[d] . . . to supervise or conduct the work of the district's Civil Division and Appellate Division . . . along with any other matters arising within the district not specifically delegated herein"; and Ari Fontecchio as Executive Assistant United States Attorney. (Att'y Gen. Pamela Bondi, Ofc. of Att'y Gen., Order No. 6510-2025) (hereinafter "AG's Order"), https://www.justice.gov/opa/media/1420361/dl.

The Government has now proposed a motion schedule in this case and seeks a trial date.

---

Habba—or to any First Assistant U.S. Attorney—would not be permissible. *Giraud*, 2025 WL 2416737, at \*26 n.257. The Government is dismissive of this view, claiming that delegation to multiple individuals rather than one results in a "reductio ad absurdum." Appellant's Br. 45. "It is not evident," it asserts, "why that distinction would be material." *Id.* But it might be material, as it is possible a more dispersed delegation of authority might not create a de facto U.S. Attorney and therefore might not run afoul of the FVRA's exclusivity provision— though we do not decide that today because those are not the facts of this case. "As it stands, Habba alone is exercising all the powers of a U.S. Attorney, making her an Acting U.S. Attorney whose appointment is not FVRA compliant.

**POINT I**

**The Delegation of All the Powers, Functions and Duties of the Office of the United States Attorney to a Triumvirate of Attorneys Violates the Appointments Clause and the Statutes Enacted by Congress, the FVRA, and the Delegation Statutes of §§§ 509, 510 and 515 Cannot Be Used as a Loophole Especially in Light of the History of Executive Abuse**

Dispersal of all the duties and functions of the Office to three individuals rather than one is still wholesale delegation of the powers of the U.S. Attorney to avoid the FVRA's exclusivity provisions, the time limits of the FVRA and the U.S. attorney specific statutes, and ultimately, the constitutional requirement that the Office be led by a senate confirmed officer.

History is important. The FVRA was the culmination of decades of evading the constitutional requirement of Senate confirmation for Officers by Administrations from both sides of the aisle and specifically, the Department of Justice's position that it operated independent of the rules. The purpose of the FVRA was to ensure that the PAS process would be followed. It structures the appointment power by temporarily filling PAS positions, but limits that service, and ensures that only specific, qualified individuals or high-ranking officials take these temporary roles.

When the Court of Appeals held that the FVRA's exclusivity provision prohibited the Government's *de facto* U.S. Attorney-by-delegation theory, it specifically found that allowing such delegation would eliminate the requirements of the FVRA and 28 U.S.C. § 546 and give the Executive carte

10

blanche to evade the PAS process entirely. *Giraud, supra*, 160 F.4th. at 403. The fact that the duties and functions of the U.S. Attorney are now dispersed among three individuals, rather than residing in one (as with Ms. Habba), does not shield this delegation from the same conclusion.  In short, the Triumvirate is no solution, but only a reformulation of the original sin.

5 U.S.C. § 3347(b) was a direct response to longstanding arguments by the DOJ, resurrected here, that general delegation statutes like §510 can be used to delegate functions of the office so as to confer authority to serve as an acting U.S. Attorney: "Nothing in the legislative history suggests that the Senate thought it was leaving the Attorney General's delegation powers in 28 U.S.C. § 510 as an exception to § 3347(b)...[t]o the contrary, that argument was a specific target of the FVRA. *United States of America, Plaintiff, v. Rafael Ramirez-Martinez, Defendant,* 2026 WL 113431, at *17, *quoting almost verbatim*, *Giraud*, 795 F. Supp. 3d at 590.   Congress enacted the FVRA to take back its Appointments Clause power which had been diminished by the DOJ's position that the heads of executive agencies could temporarily fill vacant offices outside the Vacancies Act, including the Attorney General, who "had made frequent use of organic vesting and delegation statutes to assign the duties of PAS offices to officers and employees, with little or no check from Congress."  *L.M-M v. Cuccinelli*, 442 F. Supp.3d 1, 29 (D.DC.2020) (("It was the pervasive use of those vesting-and-delegation statutes, along with "the lack of an effective enforcement process that convinced Congress of the need to enact

the FVRA( "), *citing* Federal Vacancies Reform Act of 1998, S. Rep. No. 105-250 at 3-4, 12 (July 15, 1998)

As the Third Circuit Court of Appeals found, the statutes provide limited paths through which to appoint a United States Attorney on a temporary basis. Outside § 546 and § 3345, there was/is no legal basis. *Giraud*, 160 F.4th at 403-04. As designed by Congress when it enacted the FVRA, "Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate, unless a statutory provision [§ 546] expressly authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C § 3347(a)(1)(A).

The Government's delegation theory in *Giraud* raised red flags precisely because it created "a means for the Department of Justice to circumvent the FVRA's exclusivity provisions, effectively permitting anyone to fill the U.S. Attorney role indefinitely" regardless of the careful time limits set forth in the statutes. *Giraud*, 160 F.4th at 406. As more than one court has held, the FVRA's exclusivity provisions negate the Government's "position that the statutory vesting of general agency authority in the head of any agency and allowing the agency head to delegate or reassign those vested duties and responsibilities to other agency officers or employees thereby provides an

12

alternative to the Act's otherwise exclusive means of temporarily filling vacant positions." *United States of America, Plaintiff, v. Rafael Ramirez-Martinez, Defendant. Edison Brady, Defendant. Ali Alhigaimi Esqueda, Defendant. Bryson Chee, Defendant. Joshua Black, Defendant. Ryan Nolan Kee, Defendant. Julian Gunther, Defendant. Jose Magana Garcia, Defendant. Sealed, Defendant Leon Jeremy Poellnitz, Defendant. John C. Dominguez, Defendant. Richard Sedillo, Defendant. Marty Lopez, Defendant. Mabelene Grey, Defendant. Azariah Cleveland, Defendant. Desiree Archuleta, Defendant. Kendall Benally, Defendant. Eric Shaun McAfee, Defendant. Jacob Ezekiel Martinez, Defendant.*, 1:22-CR-01721-KWR, 2026 WL 113431, at *8 (D.N.M. Jan. 14, 2026), *citing* Morton Rosenberg, Congressional Research Service Report for Congress, The New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogative 2 (1998) ("Rosenberg") at 9.   Using the District Court's analysis in *Giraud*, if the Attorney General can assert these statutes as providing the authority to appoint the Triumvirate with all of the powers of a United States Attorney for an unlimited period, "then the entirety of the actual United States Attorney provision, section 541, which requires nomination by the President and confirmation by the Senate, sets a term limit of four years, and limits removal to the President, is surplusage which the President may invoke at will." *Giraud,* 795 F. Supp. 3d at 602-03.

The Attorney General and the President are refusing to fill the vacancy as directed by statute and as required by the Constitution with a PAS Officer. The delegation of the functions and duties of the Office is wholesale, not limited, in

scope or duration. Most notably, this delegation comes in the aftermath of Circuit precedent and cases in other districts decrying the use of the vesting and delegation statutes to circumvent the FVRA and the requirement of Senate confirmation. Quite clearly, ensuring continuity of the office was not the intent or the Executive would have acted. Nor is the Government here testing the waters of a novel theory. The Triumvirate instead is a <u>deliberate</u> evasion of constitutional and statutory requirements in specific response to *Giraud*, and other cases establishing the deficiencies in this argument.

Attorney General Bondi's creation of the Triumvirate is also another attempt to claim authority that neither the executive branch nor Ms. Bondi in particular possess, in the guise of exercising her powers to delegate. 28 U.S.C. § 541(a) requires that the United States Attorney be nominated by the President and confirmed by the Senate. That has not happened. Section 546(c)(2) imposed a time limit on Ms. Bondi's ability to make an appointment, one that was extinguished upon the expiration of 120-days. 28 U.S.C. § 546(c)(2). At that point, subsection (d) provided that only the District Court judges could exercise authority to appoint a U.S. Attorney. If unhappy with that choice, the Executive had the power to override it by installing his own Senate confirmed nominee. That this has not happened indicates the very reason the FVRA was enacted: the use of the delegation statutes to avoid having to accord with the constitutional directive.

The Triumvirate is thus not a legitimate exercise of delegation but a reimagining of how to subvert the Appointments Clause.  "[A]ny decision to dispense with Presidential appointment and Senate confirmation is Congress's to make, not the President's." *Weiss v. United States*, 510 U.S. 163, 187 (1994) (Souter, J., concurring), or by extension, his Attorney General's.  Indeed, the Supreme Court has held that "[t]he head of a department has no constitutional prerogative of appointment to offices independently of the legislation of congress, and by such legislation he must be governed, not only in making appointments, but in all that is incident thereto."  *United States v. Perkins*, 116 U.S. 483, 485 (1886).

## POINT II

### The Triumvirate Violates the Separation of Powers: Wholesale Delegation is Institutional Dissolution of an Office Created by Congress and Subverts the Constitutional Requirement that the United States Attorney's Office be Headed by a PAS Officer, and Fails to Provide Accountability to the Electorate or Guarantee the Appointment of Senate Confirmed, Qualified Appointees

Attorney General Bondi's delegation of all duties and functions of the United States Attorney to the Triumvirate fundamentally changes the hierarchical structure of an Office created by Congress. Existing outside the statutory structure of either the FVRA or 28 U.S.C.§ 541 and § 546, the Triumvirate is not self-limiting and draws the full power of the United States Attorney from general delegation statutes that were meant to assist the Office in functioning, not to replace it.  However, the Triumvirate is not a creature of statute, and its unprecedented existence threatens not just the statutory

15

schemes at issue in *Giraud*, but the separation of powers. The wholesale delegation of all the functions and duties of the United States Attorney to three individuals (who have not been lawfully appointed, nor confirmed by the Senate) is the functional equivalent of dissolving a congressionally mandated office. It violates separation of powers principles, in addition to the Federal Vacancies Reform Act's exclusivity provisions, and congressional intent in establishing the district-based United States Attorney system itself.

Congress established a comprehensive statutory framework governing United States Attorney offices in 28 U.S.C. §§ 541-566. Section § 541(a) creates a mandatory duty to maintain these offices across all federal judicial districts. Congress also set forth the essential functions and duties of United States Attorneys in 28 U.S.C. § 547, duties which have now been delegated to the Triumvirate, consisting of three non -PAS officials.  That statute begins with the qualification "except as otherwise provided by law," indicating that modifications to these duties require specific statutory authorization rather than general delegation authority Ms. Bondi has used to vest the Triumvirate with the powers of a United States Attorney

In creating the Triumvirate to wield all the powers, functions, and duties of the United States Attorney, the Attorney General has arrogated power that belongs exclusively to Congress. "To Congress under its legislative power is given the establishment of offices, [and] the determination of their functions and jurisdiction...." *Myers v. United States*, 272 U.S. 52, 129 (1926).  Statutes

16

created and defined the United States Attorney's Office, from the appointment process to the zone of responsibilities.  "The Constitution requires federal officers to serve in offices 'which shall be established by Law.'" *New Mexico v. Musk*, 784 F. Supp. 3d 174, 207 (D.D.C. 2025) *quoting* U.S.C.A. Const. Art. II § 2, cl.2. Ms. Bondi's creation of the Triumvirate to substitute for a United States Attorney has no such established legal basis and operates entirely outside the laws Congress has specifically enacted.

Congress's power to create offices, including that of the United States Attorney, is but one of the many safeguards of the Constitution against the improper aggregation of power by one branch at the expense of another, but it is among the most vital.  "By keeping the ability to create offices out of the President's hands, the Founders ensured that no President could unilaterally create an army of officer positions to then fill with his supporters." *Trump v. United States*, 603 U.S. 593, 646 (2024) (Thomas, J., concurring.)   As *Giraud* and now the many other District Court decisions have made evident, the Government has attempted to wrest the appointment power from its statutory and constitutional moorings to install and keep in place executive favorites who were otherwise not capable of being qualified for the position.  The Attorney General may certainly draw upon the delegation statutes as needed, but those statutes, and the Constitution, do not authorize her to delegate every function and duty of the United States Attorney to a committee. This is death by delegation, functionally abolishing the Office of the United States Attorney by

17

reconfiguring the Office of the United States Attorney as an executive committee.

This reshaping of the very structure of the Office and its hierarchy is an unprecedented intrusion on Congress's exclusive power and it is constitutionally dangerous. "[S]eparation of the powers to create and fill offices is 'the absolutely central guarantee of a just Government' and the liberty that it secures for us all." *Trump v. United States*, 603 U.S. at 650, (Thomas J., concurring), *quoting Morrison v. Olson*, 487 U.S. 654, 697 (1988) (Scalia, J., dissenting.). Nothing prevents the Government from leaving the Triumvirate in place indefinitely, or from using similar wholesale delegations to displace the FVRA in every case. Indeed, this newest and unprecedented iteration of the Attorney General's delegation powers could result in the adoption of such committees as a substitute for a United States Attorney in every District. Such a result would effectively eliminate the requirement of senate confirmation of any United States Attorney ever, displace the appointment power of the Court, and neuter the FVRA entirely. All the executive need do is not act at all to nominate anyone, hardly what the Founders presumed would occur after entrusting the power to execute the law to the executive. See 28 U.S.C. § 541(a) If the Triumvirate is not found unlawful, the Government accomplishes a two-fold victory: it undermines not just Congress's power to designate who may appoint inferior officers to lead offices, and how such appointees are qualified, but Congress' power to create and define the Office itself.

18

## POINT III

### By Creating the Triumvirate, the Attorney General and Therefore the Executive Have Undermined the Accountability that the Appointments Clause Was Meant to Promote and Ensure

The creation of the triumvirate also diffuses accountability.  The Supreme Court has consistently emphasized the importance of the Appointments Clause in creating accountability, by limiting the power to appoint to specific officials who themselves "were accountable to political force and the will of the people".  *Freytag v. C.I.R.* 501 U.S. 858, 884 (1991).  While the President has been given the authority to nominate United States Attorneys, that nominee must be confirmed by the Senate, as must every other nominee selected to occupy important seats of power.  Senate confirmation in turn, ensures the qualifications of those individuals beyond the political or personal, acting as "an excellent check upon a spirit of favoritism in the President, and would tend greatly to prevent the appointment of unfit characters from State prejudice, from family connections, from personal attachment, or from a view to popularity."  Federalist LXXVI (Hamilton). It also ensures accountability to Congress.

The Attorney General's creation of the Triumvirate sidesteps the requirement that the person heading the Office of the United States Attorney be nominated by the President and confirmed by the Senate.   The Triumvirate therefore has no accountability to the Senate, or Congress more generally. This wholesale delegation by the Attorney General also removes from the President any accountability for his choices of Officers to the people who have

elected him.  The end result is a separation of powers crisis.  The President has

relieved himself of both responsibility <u>and</u> accountability in the selection to

head the Office, and there is no longer any real qualification or statutory

eligibility required.  *See L.M.-M v. Cuccinelli*, 442 F. Supp. 3d at 28-29.

## POINT IV

**Because a Court Appointed United States Attorney's Term Ends Only
When the Vacancy has Been Filled by a Senate Confirmed Nominee,
Desiree Grace Remains the United States Attorney; Even if the President
had the Power to Remove Her by Firing Her, and Not Filling the Vacancy,
the Power to Appoint Remains with the District Court, or the President
and  Does Not Revert to the Attorney General**

The creation of the Triumvirate also intrudes upon the District Court

Judges' authority to appoint a United States Attorney once the power of the

Attorney General under 28 U.S.C. § 546 extinguished upon the expiration of

120-days.  As other courts have found, the power to appoint a U.S. Attorney

reverts to and stays with the District Court only until the President fills the

vacancy.  *See United States v. James*, supra, at *34 ("[t]he power to appoint

…lies with the District Court until a U.S. Attorney is nominated by the

President and confirmed by the Senate under 28 U.S.C. § 541."); 28 U.S.C. §

546(c) (2), (d).  The language of the statute is explicit: "If an appointment

expires under subsection (c)(2), the District Court for such district may appoint

a United States attorney *to serve until the vacancy is filled.* 28 U.S.C. §

546(d)(emphasis added).

The statute legislates a longstanding understanding of the constitutional powers of appointment. "Since the Civil War, the judiciary has been empowered to fill vacancies in the office of United States Attorney." *United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999), *citing* Act of March 3, 1863, chap. 93, § 2, 12 Stat. 768 (1863) (Rev. Stat. 1873, § 793). This accords with both the Appointments Clause and the Separation of Powers. The power to appoint temporary United States Attorneys has strict time limitations, and § 546 works in tandem with the FVRA to encourage the timely submission of a nominee for qualification by the Senate and ensure the continued functioning of the office while the process comes to a conclusion.

The President retains the ability to replace the court appointed U.S. Attorney, who otherwise serves without a time limit. "Since Congress has conferred the power to appoint United States Attorneys only upon the President, 28 U.S.C. § 541(a), the natural conclusion is that judicially appointed interim United States Attorneys have tenure only until the President exercises his authority" and "[t]his construction in no way impedes upon Executive action or authority." *United States v. Sotomayor Vazquez*, 69 F. Supp. 2d 286, 293 (D.P.R. 1999), aff'd, 249 F.3d 1 (1st Cir. 2001), *citing United States v. Solomon*, 216 F. Supp. 835, 843 (S.D.N.Y. 1963).

President Trump did not fill the vacancy with a Senate qualified (lawful) appointee, however. Instead, Attorney General Bondi and then President Trump purported to terminate the court appointed U.S. Attorney, Ms. Grace,

with the express purpose of installing Ms. Habba, who was not a PAS Officer as required by § 541(a).   However, §546(d) grants the Executive the authority to remove a court appointed U.S. Attorney <u>only</u> by exercising his authority to fill the vacancy under § 541(a), not by firing her without such a replacement, or as here, replacing her with an otherwise unqualified candidate through a subversion of the statutes.

Arguably, there is a basis to find that having appointed Ms. Grace pursuant to § 546(d), only the District Court judges had the power to remove her.  In *Meyers v. United States*, the Supreme Court acknowledged that since the Constitutional Convention, "as a constitutional principle the power of appointment carried with it the power of removal." *Myers v. United States*, 272 at 160, *citing Ex parte Hennen*, 13 Pet. 230, 259, 10 L. Ed. 138; *Reagan v. United States*, 182 U. S. 419; *Shurtleff v. United States*, 189 U. S. 311, 315 (1901); see also *Burnap v. United States*, 252 U.S. 512, 515 (1922).  In *United States v. Perkins*, addressing whether a cadet could be dismissed from the service "at will" by the secretary of the navy, the Court described Congress's power to limit or regulate the power of removal as implied from the authority to vest appointment:

> We have no doubt that when congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for the public interest. The constitutional authority in congress to thus vest the appointment implies authority to limit, restrict, and regulate the removal by such laws as congress may enact in relation to the officers so appointed

*United States v. Perkins*, 116 U.S. 483, 485 (1886).

The Court need not determine whether the New Jersey District Court Judges' power to appoint Desi Grace also provided them the power to remove the § 546(d) judicial appointment, however. The Court can find that Congress had the authority to regulate the removal of a court appointed U.S. Attorney and did so by in § 546(d) by granting such an attorney tenure until the President filled the vacancy with a senate confirmed appointee. In other words, removal by replacement only.

Such an interpretation fulfills the overriding purpose of the FVRA and the U.S. Attorney statutes, which are meant to ensure that such an important office is filled by a qualified, Senate confirmed presidential appointee.  As set up, Congress's carefully constructed statutory scheme creates a structured progression for the exercise of authority to appoint. If the Executive fails to exercise his appointment power, through dereliction or otherwise, first the Attorney General and then the District Court, in accordance with the Excepting Clause, may fill the vacancy until he acts.  He is required, however, to "act" and to fill the vacancy as required by the Constitution.  Section 546(d) can be read as a form of insurance that he will, in that the statute provides no time limitation for the service of a court-appointed United States Attorney, in contrast to other temporary appointments made by the President or the Attorney General.  The language that the U.S. Attorney appointed by the Court "shall serve until the vacancy is filled" compels the Executive to replace, not simply remove, the court appointed U.S. Attorney.

## 28 U.S.C. § 541(c) Is Limited by Its Own Language, and Does Not Require a Contrary Reading of Section 546(d)

Section 541, which provides that '[e]ach United States attorney is subject to removal by the president" does not require a contrary holding. The statute itself can be read to limit the application of an absolute or unlimited power of removal of a U.S. Attorney appointed by the court under § 546(d).

Section 541 provides:

(a) The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.

(b) Each United States attorney shall be appointed for a term of four years. On the expiration of his term, a United States attorney shall continue to perform the duties of his office until his successor is appointed and qualifies.

(c) Each United States attorney is subject to removal by the President.

"Each United States attorney" in subsection (b) providing for a four-year term must be read to refer to the "United States attorney" appointed by the President for each judicial district as set forth in subsection (a), not every United States attorney.  The Court may read "each United States Attorney" as referring to a United States Attorney serving pursuant to subsection (a).United States Attorneys appointed by other than the default method in the Constitution (i.e., nominated by the President and qualified by the Senate) are governed by §§546 (a)-(d), and by different qualifications on the terms of their appointment: 120 or 210-days. Neither would remain in office beyond those limits. A U.S. Attorney appointed under § 546(d) has no statutory time limitation on his or her tenure and could serve beyond a four-year term. Thus,

"each United States attorney" as used in § 541 (b) and (c) cannot be read to encompass "every" U.S. Attorney but refers back to the United States Attorney appointed by the President and confirmed by the Senate.

There is dicta in lower court cases which seem to support a different finding. For instance, in *United States v. Hilario*, the court pointed to the President's power to remove a court appointed U.S. Attorney in rejecting a separation of powers challenge to § 546(d). *United States v. Hilario*, 218 F.3d 19, 27–28 (1st Cir. 2000). Refuting the proposition that a court's "interim" appointment would "impermissibly entangle[s] judges in the functioning of the Executive Branch," the court reasoned that "the Executive Branch holds all the trump cards", including the President's ability "override the judges' decision and remove an interim United States Attorney." *Id.*, *citing* 28 U.S.C. § 541(c). Notably, the court also referred to the President's retention of the right to nominate a United States Attorney, "whose confirmation by the Senate automatically will oust the interim appointee." *Id.*, *citing* 28 U.S.C. § 546(d). That decision does not compel this court to agree that the power of removal is absolute and not limited to replacement of the court appointed U.S. Attorney. The *Hilario* court conducted no statutory analysis of §§ 541(c) or (d) and was not presented with an argument either that § 541(c) right to removal of United States Attorneys might not apply to a court appointed U.S. Attorney outside the right to oust that attorney through appointment of a Senate confirmed presidential appointee. *Id.* at 27.

25

For the same reasons, the almost identical analysis in *United States v. Baldwin*, 541 F. Supp. 2d 1184 (D.N.M. 2008), upholding the appointment of another United States Attorney by the courts in the face of a separation of powers challenge, is also not compelling.  As in the *Hilario* case, the matter in *Baldwin* did not involve the creation of a *de facto* United States Attorney through the complete delegation of all the functions and duties of the Office, or the use of those powers of delegation to avoid the statutory (and constitutional) exercise of the appointment power. The Court was not faced with a specific argument regarding interpretation of the statute's language, or how it could be read in conjunction with the executive power of removal.

Importantly, § 546 (d) does not eliminate the Executive's power to remove a court appointed attorney, nor does it cede all the power to supervise an executive officer to another Branch, which would present constitutional issues. The right to remove is preserved in the right to replace, which ensures that the office is not left vacant by the executive's failure to "faithfully execute the laws" by appointing a U.S. Attorney, as mandated by § 541(a) after the exhaustion of interim and acting attorney appointments. In this sense, Section 546(d)'s language providing for a court appointed U.S. Attorney to serve until he or she is replaced by a Senate confirmed nominee is not an intrusion on the presidential power but *insurance that it will be exercised*.

Such a reading of the statute does not strip the President of removal power. In *Morrison v. Olson*, the Supreme Court concluded that a provision of

the Independent Counsel Act restricting the Attorney General's power to remove independent counsel only for good cause did not impermissibly interfere with the President's exercise of his constitutionally appointed functions, as it did not by itself "unduly trammel on executive authority". *Morrison v. Olson*, 487 U.S. 654, 691(1988). While acknowledging the counsel "exercises no small amount of discretion and judgment in deciding how to carry out his or her duties under the Act", the Court rejected the proposition that the "President's need to control the exercise of that discretion is so central to the functioning of the Executive Branch as to require as a matter of constitutional law that the counsel be terminable at will by the President." *Id.* at 691-92. The good cause requirement did not transform the case into one in which "the power to remove an executive official has been completely stripped from the President, thus providing no means for the President to ensure the 'faithful execution' of the laws." *Id.* at 692. That is also the case here.

There is no separation of powers issue. "[T]he language of th[e] 'excepting clause' admits of no limitations on interbranch appointments…[i]ndeed the inclusion of 'as they think proper' seems clearly to give Congress significant discretion to determine whether it is "proper" to vest the appointment of, for example, executive officials in the 'courts of the law." *Morrison v. Olson, supra,* 487 U.S. at 674. That same discretion allows for Congress, through the statute, to provide for the President to exercise his removal power by replacement, and not simply "removal."

27

The Triumvirate cannot replace a court appointed United States Attorney and "fill the vacancy" outside the statutory scheme just as Ms. Habba could not and did not replace Ms. Grace. Only the President may do so, and he may do so only upon nomination of a new United States Attorney and confirmation by the Senate of such person. Interpreting §541 to trump § 546(d)'s careful delineation of both the power of the Court to appoint, and the President to remove by replacing that appointee with a Senate confirmed United States Attorney permits the President and the Attorney General to ignore the Third Circuit's ruling, the statutes, and the Constitution. The Court may therefore find that legally, only Ms. Grace was lawfully appointed to that position, and that the statute and the Constitution permits Ms. Grace to serve as the United States Attorney until the Executive replaced her.

If this Court does not hold that Ms. Grace is the United States Attorney, it may yet hold that the Attorney General's wholesale delegation of the duties of that office is an exercise of power the Attorney General has no lawful authority to wield. The power to appoint a United States Attorney does not revert to the Attorney General, whose appointment power is limited by § 546 to 120 days, and the District Court still possesses "exclusive authority to appoint an interim U.S. Attorney." *United States v. Comey*, No. 1:25-CR-00272-MSN, 2025 WL 3266932, at *6; *United States v. James*, 2:25-CR-00122-JKW, 2025 WL 3266931, at *5. Because the Judges of the District of New Jersey retain the power and authority to re-appoint Ms. Grace or select another qualified candidate, Attorney General Bondi's complete delegation is without authority,

and represents a novel, dangerous and unprecedented capture of power in derogation of both statutory law and the Constitution.

## **Conclusion**

In passing the Preserving United States Attorney Independence Act of 2007 and 28 U.S.C. § 546(d) as it exists today, Congress cautioned that removing a United States Attorney "as a result of political displeasure or for political reward...would undermine the confidence of the Federal judiciary, Federal and local law enforcement agencies, the public, and thousands of Assistant United States Attorneys working in those offices." H.R. Rep. No. 110-58, at 5-6 (March.20, 2007). The danger articulated by Congress then has been realized today.... most particularly in the Eastern District of Virginia, but writ whole across the nation and in this case.

Removing Ms. Grace in order to install Ms. Habba, in contravention of the statute and the Appointments Clause, was seemingly just the first round of the Executive's attempt to refashion the Office, diffuse the appointment power, and aggrandize the Executive Branch's powers at the expense of the other branches. The triumvirate is perhaps an even more dangerous mechanism to sidestep Congress, accountability, and limits on the abuse of executive power. Embracing the delegation theory of the Triumvirate threatens a complete elimination of senate confirmation of presidential appointees, and dissolution of the United States Attorney's Office as it has been created by Congress.

29

As in *Giraud, supra*, the Court should disqualify the Triumvirate.  While the District Court declined to dismiss the indictments in *Giraud*, here there is a basis for the court to exercise its supervisory authority and dismiss the indictment to address the government's misconduct.  With the precedent of *Giraud*, and the numerous other decisions, the continued and flagrant abuse of the appointment process must be seen as misconduct not misunderstanding. This is a battle fought at the expense of all defendants, and because the Welwarts and Gary Kazcka, like many other defendants caught in this executive power play, are suffering constitutional injury deserving of remedy, only dismissal of their indictment would provoke an end to the unconstitutional suspension of their speedy trial rights, and their right to a trial that proceeds with the structural protection of a properly appointed or lawfully acting United States Attorney.

The Court can also rule that since the President has not exercised his removal power by filling the vacancy of that Office, his "removal" of Ms. Grace from that position was unlawful and ineffective, and she continues to serve in that position. The triumvirate cannot lawfully displace her. Finally, if in fact Ms. Grace does not still serve as the United States Attorney, the Court should find that in the absence of a Senate confirmed nominee appointed by the President, the Office is vacant, and the power to appoint the U.S. Attorney remains with the Court, not the Attorney General.

Respectfully submitted,


*/s Laura K. Gasiorowski*
Laura K. Gasiorowski, Esq.
*Attorney for Defendant Gary Kaczka*


*/s Lee Vartan & Melissa F. Wernick*
*Lee Vartan and Melissa F. Wernick, Esq.*
*Attorneys for Defendant William B. Welwart*


*/s  Bruce A. Levy*
Bruce A. Levy, Esq.
*Attorney for Defendant Ethan B. Welwart*